**Mike HILL, Plaintiff-Appellee,**

**v.**

**Milton GOODWIN and wife Maude Goodwin, Defendants-Appellants.**

Court of Appeals of Tennessee, Middle Section, at Nashville.

Oct. 1, 1986.

Permission to Appeal Denied by Supreme Court Jan. 5, 1987.

James T. DuBois, DuBois & Graham, Columbia, John A. Day, Boult, Cummings, Conners & Berry, Nashville, for plaintiff-appellee.

O.B. Hofstetter, Jr., Hofstetter & Hofstetter, Nashville, for defendants-appellants.

## OPINION

CANTRELL, Judge.

Mike Hill, a real estate agent in Columbia, sued Mr. and Mrs. Goodwin for specific performance of a contract to sell a farm in Spring Hill. The chancellor granted summary judgment to Mr. Hill, finding that he had completely or substantially complied with the contract terms.

On July 3, 1985, Mike Hill and Milton and Maude Goodwin executed a contract in which the Goodwins agreed to sell their farm in Maury County to Mr. Hill. The agreement contained the following with respect to the payment of the purchase price:

"The consideration for the sale of this property is the sum of $250,000.00, $5,000.00 of which is paid in cash with the execution of this contract and the balance in the amount of $245,000 to be paid upon the delivery of the deed as follows: $<u>cash;</u>

\* \* \* \* \* \*

In the event this transaction is consummated as above outlined the $5,000.00 cash deposit shall be applied on the consideration. In the event the sellers fail or refuse to carry out their obligation under this contract, said $5,000.00 cash is to be returned to the purchasers. In the event the purchasers fail, refuse or neglect to perform their obligations under this contract, then said $5,000.00 cash shall be forfeited and shall be divided equally between the sellers and agents.

In the event of such forfeiture, the purchaser shall be relieved from any further obligation under the terms of this contract. In the event the sellers fail, refuse or neglect to comply with the terms of this contract, the purchaser may enforce said contract by appropriate legal action."

The following statement was also written on the face of the contract in longhand:

"Earnest money will be forfeited if buyer does not close by September 3, 1985."

Mr. Hill, who prepared the contract, brought with him a check in the amount of $5,000.00 made payable to Mr. and Mrs. Goodwin and drawn on the account of "L.D. Hill and Sons Realty and Auction Sales." However, after Mr. and Mrs. Goodwin signed the agreement Mr. Hill did not deliver the check to them but told them he was going to deposit it in an escrow account. Two days later Mr. Hill delivered a deposit slip to Mr. Goodwin showing that two checks totaling $5,000.00 had been deposited in the escrow account of "L.D. Hill and Sons Realty and Auction."

Mr. Hill testified in his deposition that he intended to give the Goodwins the check at the signing of the contract. Instead, however, he told them that wasn't really the way to handle it "businesswise", and that the check should be placed in escrow for the sake of all concerned. According to Mr. Hill, placing the money in escrow was fine with Mr. Goodwin so long as he (Mr. Goodwin) got a copy of the deposit slip.

Mr. Goodwin's recollection of the various transactions differs slightly from that of Mr. Hill. Mr. Goodwin testified as follows:

"And he came out, brought the papers out. He had the check attached to it or stapled to it. I believe it was a clip, I think. Made out to me, five thousand. Handed me the paper and out with a pen, and I signed, my wife signed. And my daughter read it, she was there at the time. So I passed it back to him. I said don't I get this check. And he said no that's for the escrow account. And I repeated again. I said I thought to un-

derstand I was to get it. No, we put this in the escrow account. So he raised it up and put it in his file. So I reared back. I said don't I even get a copy. So he gave me a copy like this one, unsigned. He handed it to me.

\* \* \* \* \* \*

Q. (By Mr. Day) Mr. Goodwin, you saw a check there that was attached in someway to the contract, probably with a paper clip, for five thousand dollars.

A. Right.

Q. And it was made payable to you?

A. Right.

Q. Mr. Hill did not give you the check that night?

A. He did not.

Q. Did he tell you that he was going to put that money in the escrow account for L.D. Hill and Sons?

A. He didn't—he said it would go in our escrow account. He didn't say whether it was L.D. Hill or his or mine or who. I said I thought to understand I was to get the check.

Q. Okay. Did you ask him for a deposit slip reflecting that the money had in fact gone into an escrow account?

A. Not that night. He said he would bring back a deposit slip.

Q. Did he volunteer to give you the deposit slip, or did you ask him to bring you a deposit slip?

A. I guess he brought it. Now, I won't exactly say on that end of it.

Q. Was it your understanding when he left your home that night that he was going to bring you back a deposit slip?

A. That was my understanding. But I didn't know what—I thought it would be in my name as escrow account. I didn't know what an escrow account was at the time. But when he give me the deposit slip, it was in his escrow account, or L.D. Hill and Sons."

On August 9, 1985, Mr. Goodwin delivered a letter to Mr. Hill repudiating the agreement on the ground, among others, that Mr. Hill had not paid the $5,000.00 called for in the agreement.

Mr. Hill filed this action on August 20, 1985 seeking specific performance of the contract or in the alternative damages for its breach. Mr. and Mrs. Goodwin raised several defenses including Mr. Hill's failure to make the down payment called for in the contract. Both sides made motions for summary judgment. The chancellor held that by depositing the $5,000.00 in the escrow account, Mr. Hill had satisfied all the requirements of the contract. He also found as a fact that Mr. Hill had substantially performed the requirements of the contract. Therefore, he ordered Mr. and Mrs. Goodwin to convey the property to Mr. Hill.

The first issue on appeal questions the chancellor's finding that the escrow deposit satisfied all the requirements of the contract. We think that finding is clearly erroneous unless the chancellor first found that the contract had been modified to allow the down payment to be deposited in the L.D. Hill and Sons escrow account, or that the requirement for a down payment had been waived altogether. We will treat the waiver and modification issues separately below. However, the contract plainly calls for the purchaser to pay $5,000.00 down to *Mr. and Mrs. Goodwin* at the time the agreement was signed. It might be contended, that since Mr. and Mrs. Goodwin were required to pay the money back in the event of their default, that the down payment was in fact earnest money. But, as we see it, that has no effect on the requirement that the money be paid to Mr. and Mrs. Goodwin on the front end. Therefore, it cannot be said that Mr. Hill had satisfied the requirements of the written agreement.

## WAIVER

Although the chancellor did not directly hold that Mr. and Mrs. Goodwin had waived the requirement that the down payment be paid directly to them, Mr. Hill argues on appeal that they did waive that requirement. We think Mr. Hill is confusing waiver with a modification of the contract. A waiver would work to eliminate

the requirement of a down payment entirely, while a change in the contract allowing the down payment to be held in escrow describes a modification of the contract rather than a waiver. Nevertheless, we will consider Mr. Hill's contention that the conduct of Mr. and Mrs. Goodwin amounts to a waiver.

 Waiver is a voluntary relinquishment of a known right and may be established by expressed declarations or acts manifesting an intent not to claim the right. *Tennessee Asphalt Company v. Purcell Enterprises, Inc.,* 631 S.W.2d 439 (Tenn.App.1981). However, whether the waiver is expressed or implied, it must be intentional. *Baird v. Fidelity-Phenix Fire Insurance Company,* 178 Tenn. 653, 162 S.W.2d 384 (1942).

 From the record before us, we think there are disputed questions of fact on the issue of Mr. and Mrs. Goodwin's intent to waive the requirement that the down payment be paid directly to them. First, there is no proof directly on the intent of Mrs. Goodwin. Since she is one of the parties against whom specific performance is sought, her intent must be established as well as Mr. Goodwin's. In addition, from the parts of the record we have quoted above, we cannot say that Mr. Goodwin ever understood what was happening to the down payment. Mr. Hill showed up with a check drawn to the order of Mr. and Mrs. Goodwin for the amount of the down payment. However, after they signed the contract he took the check back and told them he was going to put it in escrow for their benefit. Mr. Goodwin says he thought that meant it would be in an account over which they had the control. But when Mr. Hill came back with the deposit slip it showed not one check but two deposited in an account in the name of the real estate company. Only after Mr. Goodwin had a chance to reflect on the state of affairs did he realize that he "didn't have anything." That is the time, he says, when he decided to take some action.

We agree with Mr. Goodwin's conclusion that he "didn't have anything" under the escrow account. Although Mr. Hill argues forcefully that the money was in escrow for Mr. and Mrs. Goodwin, there is no indication that the account or deposit had any relationship to the particular real estate agreement under consideration. It is as if the depositors of the money in that account had taken the money from one pocket and placed it in another so far as Mr. and Mrs. Goodwin were concerned.

We therefore hold that there are disputed questions of fact on the waiver issue. That conclusion makes this an improper case for summary judgment.

## CONTRACT MODIFICATION

 As we have indicated, we think Mr. Hill's contention amounts to an assertion that the contract was modified. Even so, we find that Mr. Hill's position is untenable on the present state of the record. In addition to the requirement that a modification of an existing contract must be supported by consideration, *Dunlop Tire and Rubber Company v. Service Merchandise Company, Inc.,* 667 S.W.2d 754 (Tenn.App. 1983), and the requirement that a modification of a contract for the sale of real estate must be in writing, *Lambert v. Home Federal Savings and Loan Association,* 481 S.W.2d 770 (Tenn.1972), the same problems exist on this issue with respect to the proof of the agreement to modify. The excerpts quoted above from the two depositions do not show that Mr. Hill and Mr. Goodwin had a meeting of the minds on the modification. There is no proof that Mrs. Goodwin agreed to the modification. Therefore, above all else, this is not a proper case for summary judgment.

## SUBSTANTIAL PERFORMANCE

Mr. Hill argues that even if the original conditions of the contract are controlling, he substantially performed the provision requiring the $5,000.00 down payment.

 First, we are not convinced that substantial performance of a contract for the sale of real estate will entitle the vendee to specific performance of that

agreement. And further, we respectfully disagree with Mr. Hill that he substantially performed his part of the contract. As we have indicated above, placing the money in the escrow account did not amount to any performance with respect to paying the down payment to Mr. and Mrs. Goodwin. We are of the opinion that the failure to make the down payment would amount to a material breach, which would entitled Mr. and Mrs. Goodwin to repudiate the agreement.

The judgment of the court below is reversed and the cause is remanded to the Chancery Court of Maury County for any further proceedings necessary. Tax the costs on appeal to the appellee.

LEWIS and KOCH, JJ., concur.