**Gerald L. CAMPBELL and Fort Loudon Realty and Auction, Inc., Plaintiffs–Appellees,**

v.

**Bill MATLOCK, Defendant–Appellant.**

Court of Appeals of Tennessee, Western Section, at Knoxville.

Dec. 8, 1987.

Application for Permission to Appeal Denied by Supreme Court April 4, 1988.

Scott R. Fransen, Dudley W. Taylor, Knoxville, for plaintiffs-appellees.

W.F. Shumate, Jr., Knoxville, for defendant-appellant.

CRAWFORD, Judge.

Defendant, Bill Matlock, appeals from the final judgment of the Chancery Court which awarded money judgments to plaintiffs, Gerald Campbell and Fort Loudon Realty and Auction, Inc.

## FACTS

Defendant is a licensed real estate agent employed with United Realty Co. which apparently is a sole proprietorship owned by Mrs. Richard Ashe. In February, 1986, Matlock obtained a listing contract for United to act as the agent for Mr. and Mrs. Alton Boleware in the sale of their residential property in Loudon County. On March 14, 1986, during the term of the listing contract, Matlock was advised by Jack Cole, the principal officer and owner of Fort Loudon Realty and Auction, Inc., that his client, Gerald Campbell, wanted to obtain an option on the Boleware property. On that same day, Matlock picked up an option contract furnished by Cole which the Bolewares executed. The contract states:

## OPTION

In consideration of the sum of Five Hundred ($500.00) Dollars the receipt of which is hereby acknowledged Shirley G. and Willie Boleware (optionors) hereby grant to Gerald L. Campbell (optionee) an option to purchase under the following conditions.

*Option Property* —the property covered by this option is described as: 4.1 acre located on Simpson Road, in Loudon County, Tennessee, and more particularly described in Deed Book 125, Page 239 of record in the Register's Office for Loudon County, Tennessee.

*Option Period* —the option period shall begin on March 14, 1986 and expire on May 14, 1986.

Optionors agree to have the property rezoned to Commercial Zoning.

*Exercise of Option* —At any time during the option period the optionee may exercise the option upon giving written notice to the optionors.

*Closing* —Closing will occur on or before 15 days after written notice of the optionee's intention to exercise said option.

(a) At closing the optionors will deliver to the optionee a good and sufficient warranty deed, free of all encumbrances.

(b) The optionee will pay to the optionors the sum of $39,000.00 in cash at the time of closing (Less $500.00) paid for the option.

(c) The optionors will pay to Fort Loudon Realty Co. the sum of $1,950.00 and to United Realty the sum of $1,950.00 as realty fees at the time of closing.

(d) Property taxes will be pro-rated at closing.

In the event the optionee does not exercise the option during the option period the $500.00 paid at the execution of this option will become the property of the optionors.

The terms and conditions set forth herein shall be binding upon an inure to the benefit of the parties hereto their heirs, successors, personal representatives and assigns.

Matlock returned the signed contract to Cole several days later and asked for the option money. Cole stated that he had a check from his client, Campbell, in the amount of $500 payable to Cole's company but he did not pay this money to Matlock. On subsequent occasions Matlock asked for payment of the money on behalf of his clients, the Bolewares, but it was not paid.

On March 26, 1986, the Bolewares contracted to purchase another residence. This contract was conditioned upon the sale by the Bolewares of their own home. On April 5, 1986, Matlock entered into a contract with the Bolewares to purchase their house and thus facilitate the purchase by the Bolewares of the other property. On April 21, 1986, Cole contacted Matlock by telephone and advised him that Campbell wanted to exercise his option to buy the Boleware property, and on April 25, 1986, the Bolewares were advised in writing of Campbell's intent to exercise the option. Matlock declined to accept the offer to exercise the option, and the Bolewares, having conveyed the property to Matlock, could not accept.

## THE PLEADINGS

Plaintiffs, Campbell and Fort Loudon Realty, filed their complaint July 26, 1986, against defendant Matlock and defendants,

Willie Boleware and Shirley G. Boleware. Plaintiffs subsequently voluntarily dismissed the Bolewares. The complaint alleges in substance that for a good and valuable consideration the Bolewares granted plaintiff Campbell an option to purchase the subject property and a copy of the option agreement is attached to the complaint. The complaint avers that plaintiff, Fort Loudon Realty, participated in the transaction as agent for plaintiff, Campbell, and that when the plaintiffs attempted to exercise the option, they were advised by the Bolewares that the property had been purchased from them by Matlock. The complaint alleges that the defendant Campbell properly exercised his option on April 25, 1986, but the Bolewares were unable to comply because they had transferred the ownership of the property to Matlock. The complaint alleges that the actions of Matlock constituted an unlawful procurement of the breach of the option contract pursuant to T.C.A. § 47–50–109 and that plaintiffs are entitled to the relief specified therein. The complaint alternatively sought specific performance of the option contract.

Defendant Matlock filed an answer to the complaint and joined issue on the material allegations therein, and specifically averred that plaintiffs repudiated and breached the contract.

## THE LAW

The issue presented for review is whether the trial court erred in holding that Matlock procured a breach of the option contract.

In Tennessee, there is a cause of action for procurement of the breach of a contract both under the common law and by statute. *Swift v. Beaty*, 39 Tenn.App. 292, 282 S.W.2d 655 (1955), *cert. denied* (1955).

T.C.A. § 47–50–109 (1984) provides:

**Procurement of breach of contracts unlawful—Damages.**—It shall be unlawful for any person, by inducement, persuasion, misrepresentation, or other means, to induce or procure the breach or violation, refusal or failure to perform any

lawful contract by any party thereto; and, in every case where a breach or violation of such contract is so procured, the person so procuring or inducing the same shall be liable in treble the amount of damages resulting from or incident to the breach of the contract; and the party injured by such breach may bring his suit for the breach and for such damages.

The statute is declaratory of the common law except as to the amount of damages that may be recovered. *Emmco Insurance Co. v. Beacon Mutual Indemnity Co.*, 204 Tenn. 540, 551, 322 S.W.2d 226, 231 (1959). In *Emmco*, our Supreme Court, speaking through Chief Justice Neil said:

The Code Section relied on (47–1706, T.C.A.) [now T.C.A. § 47–50–109] and made the basis of this action under the Second count of the declaration contemplates the improper inducement, and we might add the unlawful conduct, of the alleged wrongdoer whereby a contract is broken. The statute contemplates the imposition of a severe penalty, "and should not be enforced except upon a clear showing." *Lichter v. Fulcher*, 22 Tenn.App. 670, 125 S.W.2d 501, 508.

*Id.* at 549–50, 322 S.W.2d at 230–31.

■ The elements of a cause of action for procurement of the breach of a contract are: there must be a legal contract; the wrongdoer must have knowledge of the existence of the contract; there must be an intention to induce its breach; the wrongdoer must have acted maliciously; there must be a breach of the contract; the act complained of must be the proximate cause of the breach of the contract; and there must have been damages resulting from the breach of the contract. *Dynamic Motel Management, Inc. v. Erwin*, 528 S.W.2d 819, 822 (Tenn.App.1975).

■ Consideration is a necessary element to the formation of a legal contract. *See Price v. Mercury Supply Co., Inc.*, 682 S.W.2d 924, 933 (Tenn.App.1984). The subject of the suit in the instant case is an option contract, signed only by the optionors, the Bolewares. In *Jones v. Horner*, 36 Tenn.App. 657, 260 S.W.2d 198 (1953), the Court said:

An option is a unilateral contract whereby the optionor *for a valuable consideration* grants the optionee a right to make a contract of purchase but does not bind the optionee to do so; the optionor is bound during the life of the option, but the optionee is not. 55 Am.Jur. 492, sec. 27 et seq. (Emphasis supplied).

*Id.* at 659–60, 260 S.W.2d at 199. Obviously, since the optionee is not bound to perform any act the consideration from an optionee must be payment in some form for the option.

The trial court found that the $500 option money referred to in the option, was to be paid at the time of the execution and delivery of the option. The court then found that the failure to pay the $500 option money by Campbell "would have been a breach of contract and would have given the Bolewares some remedy against Mr. Campbell. But this is not the problem because the court holds that Mr. Matlock lacks standing to attack the validity of that contract. He was not a party to that."

■ We concur in the trial court's finding that the contract called for the payment of the option money at the time of its execution and that the option money was not paid by the optionee, Campbell. However, we do not agree with the trial court that Matlock lacks standing to raise that defense. As previously noted, one of the elements of this cause of action is the existence of a legal contract and the defendant can certainly show facts to invalidate the contract which is the subject of this suit.

In *Hill v. Goodwin*, 722 S.W.2d 668 (Tenn.App.1986), the Middle Section of this Court held that the failure to make a cash deposit to the sellers called for in a real estate sales contract was a material breach of the contract entitling the seller to repudiate the agreement. The court noted: "placing the money in the escrow account did not amount to any performance with respect to paying the downpayment to Mr. and Mrs. Goodwin." *Id.* at 672. It appears to this Court that the optionor would be in an even stronger position for repudiation, since the optionee is not bound to do any act other than to pay the option money.

In *Watts v. Warner*, 151 Tenn. 421, 269 S.W. 913 (1924), Mrs. Warner and Piggly Wiggly were sued in connection with an option Mrs. Warner had granted to Watts to lease certain property. She refused to carry out the agreement with respect to the lease of the property, but leased it to the defendant, Piggly Wiggly. *Id.* at 423, 269 S.W. at 913. Suit was filed to recover damages for the breach of the contract from Mrs. Warner, and damages from Piggly Wiggly for procurement of the breach. *Id.* Both defendants filed demurrers pleading the statute of frauds, because the description of the property involved was lacking. *Id.* The trial court sustained the demurrers of both defendants. *Id.* On appeal, Watts contended, among other things, that Piggly Wiggly was not entitled to plead the statute of frauds since it was not a party to the contract. *Id.* at 425, 269 S.W. at 913–14. The court noted that it mattered not whether Piggly Wiggly Stores was entitled to plead the statute of frauds, and stated:

> When, therefore, Mrs. Warner successfully interposed a plea of the statute of frauds and avoided the alleged contract, the whole basis of the complainant's suit against Piggly–Wiggly Stores, Inc., was swept away. No judgment could be based against a defendant for interference with an unenforceable repudiated contract. Certainly after repudiation there were no legal rights under such a contract which could be infringed.

*Id.* at 426, 269 S.W. at 914.

In *Evans v. Mayberry*, 198 Tenn. 187, 278 S.W.2d 691 (1955), plaintiff sought treble damages under statute for defendant's alleged inducement of the seller's breach of an oral contract for the sale of realty. *Id.* 278 S.W.2d at 691. The trial court sustained the defendant's demurrer to the declaration. On appeal plaintiff argued that the statute of frauds is available only to the actual parties to the contract and that third parties are not entitled to plead it. The court noted that the determinative question in the case was whether a defendant can be held liable for inducing the breach of a contract unenforceable by virtue of the statute of frauds. Considering this question the court pointed out that the majority rule in this country is that a third party could be liable for inducing the breach of a contract notwithstanding the fact that the contract itself was unenforceable between the parties. *Id.* 278 S.W.2d at 692. However, the court expressly favored the minority view which denies relief for inducing the breach of a contract unenforceable by virtue of the statute of frauds. *Id.*

The court then commented on *Watts v. Warner*, 151 Tenn. 421, 269 S.W. 913 (1924) and noted that the distinction between that case and the case under consideration was that in *Watts* the contracting party who avoided the contract was a party to the suit, but in the case under consideration the contracting party was not sued. The court said:

> That is a distinction without a difference. Piggly–Wiggly was not excused from liability because Mrs. Warner was a party to the suit. It was held not liable because the contract was unenforceable as to Mrs. Warner whom Piggly–Wiggly had induced to avoid it.

198 Tenn. at 191, 278 S.W.2d at 692.

In the case at bar the evidence is clear that no consideration passed from the optionee to the optionor. Therefore there was an unenforceable contract between the Bolewares and Campbell, which the Bolewares repudiated when they conveyed the property to Matlock. We adopt the language of *Watts v. Warner, supra:* "No judgment could be based against a defendant for interference with an unenforceable repudiated contract. Certainly after repudiation there were no legal rights under such a contract which could be infringed." 151 Tenn. at 426, 269 S.W.2d 913.

Accordingly, the judgment of the trial court is reversed, and this case is dismissed. Costs of appeal are assessed against the appellee.

TOMLIN, P.J. (W.S.), and HIGHERS, J., concur.