FILED

04/06/2017

Clerk of the
Appellate Courts

IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs January 18, 2017 at Knoxville

**DEMOND HUGHES v. STATE OF TENNESSEE**

**Appeal from the Criminal Court for Shelby County**
**No. 11-01751          Chris Craft, Judge**

_____

**No. W2016-00414-CCA-R3-PC**
_____

The Petitioner, Demond Hughes, appeals the Shelby County Criminal Court's denial of his petition for post-conviction relief from his 2012 convictions for especially aggravated robbery, aggravated robbery, and aggravated rape and his effective twenty-five-year sentence. The Petitioner contends that he received the ineffective assistance of counsel. We affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ROBERT H. MONTGOMERY, JR., J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and D. KELLY THOMAS, JR., JJ., joined.

Randal G. Rhea, Memphis, Tennessee, for the appellant, Demond Hughes.

Herbert H. Slatery III, Attorney General and Reporter; Zachary T. Hinkle, Assistant Attorney General; Amy P. Weirich, District Attorney General; and Melanie Cox, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

The Petitioner's convictions arise from his pleading guilty to the charged offenses in exchange for concurrent sentences of twenty-five years for especially aggravated robbery, twelve years for aggravated robbery, and twenty-five years for aggravated rape. On May 30, 2013, the Petitioner sought post-conviction relief on multiple grounds. He filed a pro se petition, and after the appointment of counsel, two amended petitions were filed by post-conviction counsel. The Petitioner raised multiple grounds for relief, but the sole issue raised on appeal focuses on whether counsel provided ineffective assistance by failing to provide the Petitioner with transcripts of his recorded jail telephone calls before he rejected the State's initial twenty-year plea offer. Our recitation of the evidence from the post-conviction hearing is limited to that which is relevant to this issue.

At the post-conviction hearing, the Petitioner[1] testified that his case was originally scheduled for trial, that counsel presented a plea offer from the State for twenty years, and that the Petitioner rejected the offer. The Petitioner said he rejected the offer because he wanted a trial, although counsel believed he would have been convicted if the case went to trial. The Petitioner said he also rejected the offer because counsel believed counsel could negotiate a fifteen-year sentence. The Petitioner said that at the time of the twenty-year plea offer, he did not know the State had recordings of his jail telephone calls. The Petitioner said that he learned of the recordings the day before the scheduled trial date, that counsel provided him with transcripts of the recordings, and that counsel instructed him to review the transcripts and "make up" his mind. The Petitioner said that he listened to the recordings on the morning of the scheduled trial date and that counsel and the prosecutor were present when they were played.

The Petitioner testified that none of the State's witnesses identified him as the perpetrator at the preliminary hearing and that counsel did not discuss a trial strategy. The Petitioner said that he decided to plead guilty after listening to the recordings of the jail telephone calls. He said that learning of the recordings at the last minute made it impossible to weigh the benefits and consequences of pleading guilty or going to trial. He said he was overwhelmed and did not believe counsel was ready for trial. The Petitioner said that because of his criminal history, counsel discussed a possible sixty-year sentence if he were convicted at a trial and that the State's offer was based upon a Range I offender classification.

On cross-examination, the Petitioner testified that he never told counsel what occurred at the time of the offenses, that he and counsel met at the courthouse about five times, and that counsel came to the jail once, which was the night before the scheduled trial date, to provide him with a transcript of the jail telephone call recordings. The Petitioner said that counsel told him the best plea offer he could negotiate was fifteen years, although the paperwork counsel provided stated twenty years. The Petitioner said he declined the twenty-year offer because counsel stated the offer was fifteen years.

The Petitioner testified that the jail telephone call recordings reflected his and a female friend's discussing the charges against him. He said that although the State attempted to say the recordings reflected his telling the friend what he had done to the victims, he was merely explaining to the friend what the police had accused him of doing. He said that after listening to the recordings, counsel advised him to plead guilty because of the incriminating nature of the Petitioner's statements. The Petitioner said he pleaded guilty because he took

---

[1] The Petitioner testified that his name was Demond Gunn but that he was also known as Demond Hughes.

counsel's "word" and did what counsel said was best. The Petitioner recalled that counsel advised him the possible maximum sentence was more than sixty years.

Counsel testified that he had been a licensed attorney for thirty-four years and that he represented the Petitioner in the present case. He said that he learned of the jail telephone call recordings between March 27, 2012, and the day the Petitioner entered his guilty pleas. He said that as he prepared for a trial, he reviewed the discovery materials and noticed that recordings of the Petitioner's jail calls existed. Counsel said that he contacted the prosecutor about the recordings and that two weeks before the Monday, November 5, 2012 trial, the prosecutor said she had copies of the recordings and would prepare transcripts. Counsel said he made the Petitioner aware of the recordings and took transcripts to the Petitioner on the Sunday before the trial was scheduled to begin the next day.

Counsel testified that he and the prosecutor informed the trial court Friday before the trial date that the recordings existed and that it was possible the parties might request the court to consider the change of circumstances as a basis for permitting the Petitioner to enter a guilty plea. Counsel said the court agreed to consider any request Monday morning. Counsel said that the recordings were played for the Petitioner Monday morning, that counsel advised the Petitioner about how the recordings "changed the perspective" of how counsel would defend the Petitioner, and that afterward, the Petitioner agreed to plead guilty in exchange for twenty-five years.

Counsel testified that the Petitioner's theory of the case was that none of the witnesses could identify him as the perpetrator and that counsel considered the Petitioner's identification defense while reviewing the State's discovery materials. Counsel said he received a second discovery package in late March 2012, before the November 2012 trial date. Counsel said that he met with the Petitioner on April 17, 2012, that they discussed the theory of the case, including a possible alibi defense, and that they reviewed the discovery materials. Counsel said the recordings of the jail telephone calls were not discussed because counsel was unaware of them at the time. Counsel said he began preparing for trial on the theory that the Petitioner was not present during the offenses. Counsel said that he had three rules for his clients, including that his client not talk about his case with anyone unless counsel was present. Counsel said that he told the Petitioner about this rule but that the Petitioner did not listen to counsel because the Petitioner was recorded discussing his case when he was in jail.

Counsel testified that the severe injuries inflicted upon the male victim were damaging in this case. Counsel said he told the Petitioner about counsel's concerns that the victim's testimony regarding the victim's injuries and the perpetrator would have been credible and that the jury would convict the Petitioner. Relative to the Petitioner's alibi

defense, counsel said the Petitioner identified his grandmother and the mother of his child as potential witnesses. Counsel recalled that he could not locate the grandmother and that the mother of the Petitioner's child was the woman identified in the recordings.

Counsel testified that the delay in receiving the recordings did not impact his ability to advise the Petitioner and said he would have maintained identification and alibi defenses had the recordings not been identified. Counsel said he advised the Petitioner that the recordings were not the State's strongest evidence but that the recordings would have corroborated the victims' testimony. Counsel said, though, that he could not present an alibi witness to testify after hearing the Petitioner admit guilt in the recordings and that the recordings increased the Petitioner's exposure to consecutive sentences.

Counsel testified that he advised the Petitioner that the twenty-five-year plea offer was within the sentencing range and that counsel feared the circumstances of the offense would have led the trial judge to impose consecutive sentences after a trial. Counsel recalled that the offenses involved two victims, that two or three surgeries were required to repair the injuries inflicted upon the male victim, and that the Petitioner's previous criminal history classified him as a Range III offender. Counsel said that although the State's initial offer was twenty years as a Range I offender, the Petitioner pleaded guilty to twenty-five years at 100% service as a violent offender. Counsel said that the Petitioner never said he did not want to accept the twenty-five-year offer because he wanted to accept the twenty-year offer.

On cross-examination, counsel testified that the prosecutor had an open-file discovery policy and that he immediately provided the Petitioner with copies of the materials. Counsel said that he and the Petitioner discussed the State's initial plea offer of twenty years at their April 17, 2012 meeting and that the Petitioner said he had an alibi, was not at the scene, and did not know the witnesses involved in the case. Counsel said he advised the Petitioner to go to trial if the Petitioner was not involved in the offenses and did not know the victims or the codefendant. Counsel said that the Defendant rejected the offer and that the trial court scheduled a trial date.

Counsel testified that he received the recordings of the jail telephone calls at the "eleventh hour" before the trial and believed that transcripts were provided to him Thursday or Friday before the Monday trial date. Counsel said that the incriminating nature of the recordings would have prevented him from presenting any alibi witnesses. He said that the twenty-five-year plea offer was an enormous benefit to the Petitioner because counsel believed the trial court would have imposed consecutive sentences after a jury trial based upon the heinous nature of the victim's injuries. Counsel said that he and the Petitioner reviewed the plea offer, that counsel received "no pull back" from the Petitioner at any time regarding the plea agreement, and that the trial court, the prosecutor, and counsel questioned the Petitioner at the guilty plea hearing. Counsel said that the Petitioner's answers were clear

and certain, that the Petitioner gave no indication he did not want to plead guilty, and that counsel believed the guilty pleas were knowing and voluntary.

The post-conviction court denied relief. The court found that the Petitioner presented no evidence regarding when the Petitioner made the jail telephone calls but that the evidence showed the prosecutor and counsel did not know about the recordings until after the April 17, 2012 court hearing, during which the Petitioner rejected the State's twenty-year plea offer and scheduled the trial date. The court noted that the Petitioner was questioned by the trial court on April 17 and that the prosecutor did not mention the recordings when stating the alleged proof against the Petitioner. The court found that the recordings were requested by the prosecutor after the trial date was scheduled and that the Petitioner failed to establish that counsel could have obtained them before scheduling the trial date. The court stated its opinion that the State would never have extended the twenty-year plea offer had it known of the recordings before April 17. The court found that counsel stated at the guilty plea hearing that he had received transcripts of the recordings the week before the trial date and that he had provided copies to the Petitioner the weekend before the Petitioner entered his guilty pleas.

The post-conviction court noted that logistical difficulties prevented the Petitioner from listening to the recordings until the morning of the scheduled trial date. The court stated that the recordings were devastating to the chosen defense theory and that although the court would have permitted a continuance, the Petitioner chose to plead guilty in exchange for a twenty-five-year sentence. The court found that the trial court waived its policy of not permitting a defendant to plead guilty after a trial date was scheduled and that the Petitioner did not lose his privilege to enter guilty pleas. The court also found that the Petitioner did not lose the benefit of the twenty-year plea offer as a result of counsel's performance. The court found, instead, that the twenty-year offer increased to twenty-five years after the State learned it could establish the Petitioner's identity as the perpetrator based upon the recordings. The court determined that the Petitioner had failed to establish counsel provided deficient performance and to establish prejudice. This appeal followed.

The Petitioner contends that the post-conviction court erred by denying relief. He argues that counsel provided ineffective assistance by failing to provide him with recordings of his jail telephone calls before he rejected the State's twenty-year plea offer. The State responds that the post-conviction court properly denied relief.

Post-conviction relief is available "when the conviction or sentence is void or voidable because of the abridgement of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." T.C.A. § 40-30-103 (2012). A petitioner has the burden of proving his factual allegations by clear and convincing evidence. *Id.* § 40-30-110(f) (2012). A post-conviction court's findings of fact are binding on appeal, and this court must defer to them "unless the evidence in the record preponderates against

those findings." *Henley v. State*, 960 S.W.2d 572, 578 (Tenn. 1997); *see Fields v. State*, 40 S.W.3d 450, 456-57 (Tenn. 2001). A post-conviction court's application of law to its factual findings is subject to a de novo standard of review without a presumption of correctness. *Fields*, 40 S.W.3d at 457-58.

To establish a post-conviction claim of the ineffective assistance of counsel in violation of the Sixth Amendment, a petitioner has the burden of proving that (1) counsel's performance was deficient and (2) the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see Lockhart v. Fretwell*, 506 U.S. 364, 368-72 (1993). The Tennessee Supreme Court has applied the *Strickland* standard to an accused's right to counsel under article I, section 9 of the Tennessee Constitution. *See State v. Melson*, 772 S.W.2d 417, 419 n.2 (Tenn. 1989).

A petitioner must satisfy both prongs of the *Strickland* test in order to prevail in an ineffective assistance of counsel claim. *Henley*, 960 S.W.2d at 580. "[F]ailure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim." *Goad v. State*, 938 S.W.2d 363, 370 (Tenn. 1996). To establish the performance prong, a petitioner must show that "the advice given, or the services rendered . . . , are [not] within the range of competence demanded of attorneys in criminal cases." *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975); *see Strickland*, 466 U.S. at 690. The post-conviction court must determine if these acts or omissions, viewed in light of all of the circumstances, fell "outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. A petitioner "is not entitled to the benefit of hindsight, may not second-guess a reasonably based trial strategy by his counsel, and cannot criticize a sound, but unsuccessful, tactical decision." *Adkins v. State*, 911 S.W.2d 334, 347 (Tenn. Crim. App. 1994); *see Pylant v. State*, 263 S.W.3d 854, 874 (Tenn. 2008). This deference, however, only applies "if the choices are informed . . . based upon adequate preparation." *Cooper v. State*, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992). To establish the prejudice prong, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*

The record reflects that that on April 17, 2012, the Petitioner rejected the State's twenty-year plea offer and scheduled the case for trial on Monday, November 5, 2012. The transcript of the April 17 hearing is not included in the appellate record. On November 5, the Petitioner chose to plead guilty as charged in exchange for an effective twenty-five-year sentence. The guilty plea hearing transcript, received as an exhibit at the post-conviction hearing, reflects that counsel informed the trial court that during the previous week, the State made counsel aware of recordings of specific jail telephone calls placed by the Petitioner and that the State provided counsel with transcripts of the recordings on Friday. Counsel said the

recordings and transcripts had not been made available to counsel at the April 17 hearing, during which the Petitioner was questioned about his decision to reject the twenty-year plea offer and to schedule his case for trial. Counsel said that after the April 17 hearing, the recordings and transcripts were provided to him, that they were "sufficiently and significantly incriminating," and that they would have been damaging to the Petitioner's defense. Although the court had a rule of not permitting a defendant to plead guilty after a trial date was scheduled, counsel requested that the court waive its rule to consider a plea agreement in the Petitioner's case. The prosecutor stated that she "turned over all [123] jail calls . . . that was in the State's possession as part of the original discovery" and sent counsel an email stating the "gist of what [she] believe[d] would be produced at trial." The prosecutor said she did not believe counsel had heard the recordings before November 5 and no mention was made of when the State learned of the incriminating statements in the recordings.

The trial court inquired about the substance of the recordings. Counsel informed the trial court that the relevant recordings were made when the Petitioner was booked into the jail and when the Petitioner was placed into the general population. Counsel paraphrased the substance of the recordings, during which the Petitioner explained that he "shoved" a broomstick into the male victim's rectum and that the Petitioner and his codefendant "tortured" the victim because the victim "couldn't come up with what [they] went in there for." The court agreed that the evidence was inculpatory and allowed the Petitioner to enter his guilty pleas in exchange for twenty-five years. After the court reviewed the charges against the Petitioner, the terms of the plea agreement, and the rights the Defendant waived by pleading guilty, counsel and the prosecutor questioned the Petitioner. During the voir dire, the Petitioner agreed that counsel provided the Petitioner with transcripts of the jail telephone call recordings the previous night, that the Petitioner had listened to the recordings in the courtroom earlier that morning, and that the Petitioner wanted to plead guilty. The Petitioner admitted his voice was heard in the recordings.

Although the Petitioner claims that counsel should have obtained the recordings before the April 17 hearing at which the Petitioner rejected the twenty-year plea offer, the evidence is unclear relative to when the State obtained, had reviewed and learned of the incriminating statements, and informed the defense of its intent to use the recordings at a trial. Although the guilty plea hearing transcript reflects that the prosecutor told the trial court that in the original discovery she identified the Petitioner's jail telephone calls and provided a summary of what the proof would have been at a trial, the record does not reflect that the prosecutor's original discovery contained a summary of the Defendant's incriminating statements in the recordings. Likewise, no evidence shows when the State provided the original and subsequent discovery materials to counsel, and the discovery materials are not included in the record. Counsel's credited post-conviction hearing testimony reflects that counsel received a second discovery package in late March and that

before the April 17 hearing, counsel and the Petitioner discussed the theory of the case and reviewed the discovery materials. Counsel said that the recordings were not discussed at their meeting because counsel was unaware of the incriminating statements.

Counsel testified that he learned recordings existed between March 27 and November 5 and that during his review of the discovery materials, he noticed the discovery materials referenced recordings. Counsel testified that two weeks before the trial, he contacted the prosecutor who said she had copies of the recordings and would prepare transcripts for counsel's review. Counsel said that he received the recordings after contacting the prosecutor before the trial and that transcripts were provided by the prosecutor on the Thursday or Friday before the Monday trial date. Although the transcript of the April 17 hearing is not included in the record, the post-conviction court apparently reviewed the transcript and found that the prosecutor did not mention the recordings when she told the trial court the alleged proof against the Petitioner. Although a list of the jail telephone calls might have been provided to counsel before the April 17 hearing, the post-conviction court found that the recordings themselves were not requested by the State until after the case was scheduled for trial, and the court noted this was the district attorney's office's usual practice. The evidence at the post-conviction hearing does not preponderate against the post-conviction court's finding in this regard, and the findings are binding on appeal. We note that the prosecutor was not presented as a witness at the post-conviction hearing, and we will not speculate on what her testimony would have been regarding discovery, when she requested the recordings, when she reviewed and learned of the inculpatory content of the recordings, when she provided the relevant recordings to counsel, and when she advised counsel of her intent to use the recordings at a trial. *See Black v. State*, 749 S.W.2d 752, 757 (Tenn. Crim. App. 1990). The State did not argue at the post-conviction hearing that counsel was provided information regarding the substance of the relevant recordings before the week before the trial date.

The record reflects that no evidence shows counsel knew or should have known the Petitioner's incriminating statements in the recordings before the State provided transcripts the week before the trial. Counsel was not questioned at the post-conviction hearing about his reasons for not requesting recordings of the Petitioner's jail telephone communications, and this court will not speculate. Although counsel was advised the Petitioner had made jail telephone calls, no evidence shows the State intended to use any of the recordings of the calls at a trial until after the Petitioner rejected the twenty-year plea offer. Likewise, counsel testified that he advised the Defendant not to speak about his case with anyone unless counsel was present, and the recordings show the Petitioner failed to follow counsel's advice. The failure to question counsel about his reasons for not obtaining the recordings, independent of the State's investigation, prevented a showing that counsel provided deficient performance or that any deficiency resulted in prejudice.

-8-

The record reflects that the Petitioner made a portion of the incriminating statements at the time he was booked into the jail, which occurred before the April 17 hearing. Counsel testified that the Petitioner maintained his innocence at their April 17 meeting that occurred before the court hearing and that based upon the information the Petitioner provided and the discovery materials, counsel advised the Petitioner to proceed to trial because the Petitioner claimed he had an alibi witness, was not at the scene, and did not know the victims. The Petitioner and the person to whom he was speaking in the telephone calls were the only people who were aware of the existence of the incriminating statements at the April 17 hearing when the Petitioner rejected the twenty-year plea offer. The record does not preponderate against the post-conviction court's findings, and the Petitioner is not entitled to relief on this basis.

Based upon the foregoing and the record as a whole, the judgment of the post-conviction court is affirmed.

_____
ROBERT H. MONTGOMERY, JR., JUDGE