IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
August 18, 2021 Session

## ROBERT C. PELT ET AL. v. RICHARD E. BENJAMIN ET AL.

**Appeal from the Chancery Court for Wilson County**
**No. 2019CV32        Charles K. Smith, Chancellor**

————————————————————

### No. M2020-01068-COA-R3-CV

————————————————————

This case concerns an alleged contract for the sale of real property. Although a prior written offer regarding the property expired pursuant to its stated terms when it was not timely accepted, the trial court held that there was an oral agreement to extend the expiration date for acceptance and concluded that the Statute of Frauds did not serve as an impediment to enforcement of the parties' alleged contract when the plaintiffs, the appellees herein, filed suit to enforce it. The trial court also concluded that no damages should be awarded under former Tennessee Code Annotated section 66-21-108 to the defendants, who had asserted a slander of title claim in the trial court. The defendants now appeal, challenging both the trial court's contract law analysis and its decision to not award them statutory damages. Although we reverse the trial court's judgment with respect to the plaintiffs' breach of contract claim, we affirm its refusal to award the defendants statutory damages for the reasons stated herein.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Reversed in Part, Affirmed in Part, and Remanded**

ARNOLD B. GOLDIN, J., delivered the opinion of the Court, in which ANDY D. BENNETT, J., and J. STEVEN STAFFORD, P.J., W.S., joined.

Shawn J. McBrien, Lebanon, Tennessee, for the appellants, Vicki J. Benjamin and Richard E. Benjamin.

E. Kirkham Gore, III, and Blake Harris Reynolds, Franklin, Tennessee, and J. Caralisa Connell, Dallas, Texas, for the appellees, Robert C. Pelt and Diane L. Pelt.

### OPINION

### BACKGROUND AND PROCEDURAL HISTORY

The parties in this case are Robert and Diane Pelt ("the Pelts") and Vicki and Richard Benjamin ("the Benjamins"). The underlying dispute arises from the Benjamins' efforts to sell their Lebanon, Tennessee home. The Benjamins originally listed their home on the market in December of 2018 for $649,900.00, and on December 21 of that month, the Pelts made an offer to purchase the property for $625,000.00. That offer, which was reflected in a document styled "Purchase and Sale Agreement," provided that it would terminate at 5:00 p.m. on December 22, 2018.

The following day, the Benjamins executed a counter-offer in a document entitled "Counter Offer #1" ("the Counter-Offer"). Among other things, the Counter-Offer proposed that the sales price be $635,000.00. Moreover, as is of consequence to our discussion herein, the Counter-Offer specifically stated that it would terminate if not accepted by 5:00 p.m. on December 22, 2018.

The Pelts did not timely accept the Counter-Offer in accordance with its stated terms. Accordingly, the offer expired. Nevertheless, it is the Pelts' contention that subsequent activity between the two sides allowed them to accept the Counter-Offer past the stated 5:00 p.m. deadline on December 22, 2018. Following the Christmas holiday, on December 27, 2018, the Pelts viewed the property with a contractor. A couple of days later, on December 29, 2018, the Pelts' real estate agent called Mr. Benjamin to advise him that the Pelts would accept the Counter-Offer. The specific contents of this phone call, however, remain a subject of dispute among the parties. According to the trial court's later findings, there was an *oral* agreement to extend the Counter-Offer's expiration date for acceptance, the new supposed date being fixed at January 4, 2019.

Regarding the phone call, the Pelts' agent testified that when she broached the issue of her clients being able to sign contractual documents when they returned from a California trip, Mr. Benjamin "originally said that he would need to speak to his wife." According to Mr. Benjamin, when the Pelts' agent said that her clients were going to sign the Counter-Offer, he mentioned how the Counter-Offer had expired and that she should send him an "extension" so that, after an extension was signed, there could again be a viable offer.

In a December 29, 2018 text message, Mr. Benjamin stated that "we have to wait til tomorrow to get back to u on this." According to his testimony, Mr. Benjamin stated that this message concerned the Pelts' interest in a jewelry box at the property. The following day, he sent another message stating as follows: "We have a greed [sic] to the verbal in the addendum but will continue to show until we have a signed agreement and preapproval letter. And the addendum." The Pelts' agent responded to this message by writing as follows: "My clients believe in giving their word has [sic] a commitment that they will purchase your property. They will sign everything when they return and I will get it sent to you on Friday. They believe in respect and honesty. They are truly great people." Mr. Benjamin simply responded, "K great. Thx."

- 2 -

Although these messages revealed ongoing negotiations and the Benjamins' potential willingness to enter into a contractual agreement with the Pelts, nowhere did these messages evidence a firm renewed written offer that allowed for an acceptance of the prior Counter-Offer outside of its stated—and now expired—terms.[1] Again, as already noted, that written offer had already expired. Ostensibly relying on the alleged oral agreement to extend the Counter-Offer's acceptance period, the Pelts' agent later sent the Counter-Offer, signed by Mr. Pelt,[2] to Mr. Benjamin on January 4, 2019 at 7:13 p.m. The email indicated that the "**signed counter offer that we <u>verbally agreed to</u>** along with the bank letter" were attached. (emphases added)

The following day, Mr. Benjamin responded to the Pelts' agent's email by noting that he had accepted another offer on January 4 "around 7 PM." As it turns out, the written contract evidencing the Benjamins' arrangement with other parties, James and Kaycee Owen ("the Owen family"), reflects that it was actually executed at 8 p.m. on January 4. The Pelts' agent then sent a follow-up email asking why Mr. Benjamin would not have allowed her clients "to bring their highest and best offer." Mr. Benjamin responded by noting that he had previously stated that he and Ms. Benjamin "would continue to show the property after [the Pelts'] delayed verbal acceptance." He further noted that it "appears that we were meeting with our buyer at precisely the time you called and sent the expired signed counter."

The present litigation ensued in the wake of the Benjamins' contention that they had

---

[1] Interestingly, the trial court noted as follows during the course of trial: "I saw one [message] that said verbal in the addendum of course was okay that as she's testified the addendum or the attached items, and she went over some of them. But **I'm sure she's got something else that says the verbal contract regarding extension of the expiration date is okay, <u>but I haven't seen that. I would just like to see it</u>**." (emphases added) It then later stated again that, "[I]f there's somewhere else that she wants to show me there was verbal approval extension of the time I think, but I don't think it exists." As noted herein, the trial court ultimately concluded that the expiration date regarding acceptance of the Counter-Offer had merely been verbally modified (and sufficiently so in the court's view). When asked during trial if there was no signed extension agreement regarding the Counter-Offer, the Pelts' agent testified, "That is correct." During Ms. Pelt's testimony, when asked if she had received a document that said there was a contract extension or an extension of any of the prior paperwork, she replied, "No."

[2] There is no dispute that the sent, signed copy contained Mr. Pelt's signature. Whether it contained Ms. Pelt's signature is another question. The record contains a copy signed by only Mr. Pelt, which Mr. Benjamin claims to have received, as well as one signed by both of the Pelts. The Pelts' agent stated that she "can't testify which one was actually attached to the email," although she thought she attached the one with both signatures. She attributed the presence of different copies to how the electronic signature platform she uses works, as it requires parties to sign separately. We do not need to definitively resolve whether the *attached*, signed Counter-Offer was signed by both of the Pelts or only Mr. Pelt. That fact is irrelevant to our specific discussion herein. Interestingly, the trial court appears to have made a finding that the Pelts' agent sent the version containing both signatures, stating that the "Buyers emailed a copy of the Counter-Offer signed by Buyers." The court made this finding despite the agent's statement that she could not testify which copy was actually attached and the testimony of Mr. Benjamin that the copy containing only Mr. Pelt's signature was included.

a binding contract with the Owen family, not the Pelts. The Pelts filed suit in the Wilson County Chancery Court ("the trial court") asserting the Benjamins were in breach of contract and seeking an order of specific performance for the sale of the property. The Pelts also requested that the court clerk certify an abstract of suit/notice of lien *lis pendens*. Although the Benjamins moved to dismiss the action, in part by invoking the Statute of Frauds, the trial court denied the motion.

The Benjamins later filed an answer and again specifically invoked the Statute of Frauds as a defense. They also asserted a counterclaim and contended that they had suffered damages as a proximate cause of the Pelts' alleged "slander of title by the filing of the lien lis pendens." With respect to this claim for relief, the Pelts subsequently filed a motion to dismiss, arguing, among other things, that the Benjamins "did not assert anything to suggest that the [Pelts] filed their lawsuit against the [Benjamins] maliciously or knowing that they did not have a cognizable claim at law."

The Benjamins thereafter moved to amend their counterclaim, which they proposed would specifically include a claim for damages under former Tennessee Code Annotated section 66-21-108, a statute which had provided relief to certain landowners who prevailed in certain proceedings, "including in a slander of title proceeding." The trial court later entered an order denying the Pelts' motion to dismiss, while also granting the Benjamins permission to amend their counterclaim.

Following a multi-day trial, the trial court entered its "Finding[s] of Fact and Conclusion[s] of Law" on July 22, 2020 and, on August 6, 2020, its "Final Judgment Order." The trial court concluded that there was a binding contract between the two sides and ordered the Benjamins to specifically perform it. In the court's view, the Counter-Offer's stated expiration date simply did not apply; indeed, the court concluded there had been an "oral modification to extend the expiration date to January 4, 2019." In an attempt to support its conclusion that a writing was not required to reflect this modification and that a Statute of Frauds defense was "waived," the trial court referenced Tennessee case law holding that oral agreements to modify contracts may be given effect notwithstanding written provisions prohibiting the same. Very simply, the court concluded, "the contract was orally or verbally modified to extend the expiration date without affecting the validity of the contract." As discussed *infra*, the trial court's conclusion that a *contract* had been modified is somewhat confusing inasmuch as it presumably was referencing the Counter-Offer, which of course was not a binding contract at the time of the alleged oral extension.

In addition to awarding the Pelts relief pursuant to their breach of contract claim, the trial court also held that the Benjamins' slander of title counterclaim had not been properly proven. Accordingly, the trial court ruled, the Benjamins were not entitled to any statutory damages under former Tennessee Code Annotated section 66-21-108. Following the entry of judgment, the Benjamins timely appealed to this Court.

- 4 -

## DISCUSSION

As we perceive it, the Benjamins' brief requires us to address two primary issues. First, we must address whether the trial court erred in finding that the Benjamins' Statute of Frauds defense did not serve as a barrier to the Pelts' breach of contract action. Second, we must consider the Benjamins' contention that they are entitled to statutory damages under the provision formerly codified at Tennessee Code Annotated section 66-21-108.

*Statute of Frauds Issue*

The dispute at the center of this litigation concerns an alleged contract for the sale of land. Pursuant to Tennessee's general Statute of Frauds, no action shall be brought "[u]pon any contract for the sale of lands" unless "the promise or agreement, upon which such action shall be brought, or some memorandum or note thereof, shall be in writing, and signed by the party to be charged therewith, or some other person lawfully authorized by such party." Tenn. Code Ann. § 29-2-101(a). As noted earlier, in connection with its decision that a valid contract existed between the parties and that the Statute of Frauds posed no problem to the Pelts' pursuit of relief, the trial court determined that there had been a waiver incident to the alleged extension of the Counter-Offer. The trial court further determined that the parties' "contract was orally or verbally modified to extend the expiration date without affecting the validity of the contract." As supporting legal authority for its opinion on these matters, the trial court cited a prior decision from this Court which explained that oral alterations of an agreement can be given effect even where a written contract prohibits oral modifications. *See Lancaster v. Ferrell Paving, Inc.*, 397 S.W.3d 606, 611-12 (Tenn. Ct. App. 2011) ("[W]e find that both parties consented to the oral modification of the Security Service Agreement and both parties waived the requirement that contractual modifications must be in writing.").[3]

---

[3] Based on the case law referenced by the trial court and its corollary finding that there had been a *modification*, we interpret its own finding that "the Statute of Frauds defense was waived" as signaling the waiver of the provision incorporated into the Counter-Offer which prohibited modifications "unless signed by all parties." Thus, by dint of that alleged waiver, the parties could, in the court's apparent view, freely enter into an oral modification. We explain elsewhere in this Opinion the problems with this reasoning.

There are places in the record where the Pelts appear to argue that the "waiver" that occurred is in relation to the expiration date term itself, not a term concerning signed modifications. Putting aside the fact that there were no binding contract terms in existence at the time of the alleged *modification* (a point we will discuss within this Opinion in connection with the court's findings), the subject of the alleged oral agreement and the court's findings on same appear to bely such an interpretation. Indeed, as it concerns the *expiration date* term, what is being argued about is whether that term was changed, i.e., modified. *See Hill v. Goodwin*, 722 S.W.2d 668, 670-71 (Tenn. Ct. App. 1986) (noting differences between waiver and modification and observing that the former involves elimination and the latter a change).

The Pelts' brief also contains an argument on the doctrine of equitable estoppel. Although they do not otherwise present the matter as a formal issue for review, the Pelts outline conduct which they submit is "sufficient to invoke equitable estoppel." Indeed, the Pelts contend that the Benjamins "should be"

In addressing the trial court's reliance on the above authority to allow the Pelts to circumvent the application of the Statute of Frauds, we are of the opinion that a couple of observations are in order. First, as a technical matter, there was no *contract* in place to modify as the language of the court's order suggests. Indeed, the Counter-Offer was not accepted by the Pelts prior to its stated expiration date, and as such, there simply were no contractual rights in existence at the time of the alleged oral agreement to modify the terms of the Counter-Offer. Again, the Counter-Offer was merely what its name plainly suggests, an offer, and that offer expired. Regardless, the principle articulated in the case law relied upon by the trial court in no way means, as the trial court appears to have concluded, that a Statute of Frauds defense is somehow negated simply because a party orally agreed to modify an existing written agreement, even one with language amounting to a no oral modification clause. As one commentator has observed, although there is undoubtedly authority (such as that cited by the trial court) allowing for oral modifications of written agreements that contain a no oral modification clause, this line of authority "can be misleading . . . because taken out of context, [it] fail[s] to account sufficiently for the statute of frauds." Steven W. Feldman, 22 Tenn. Practice: Contract Law and Practice § 10:5 (September 2021). The Statute of Frauds, therefore, must still be accounted for and taken into consideration, making the case law relied upon by the trial court inapposite given the subject matter at issue here. Indeed, when a transaction of real estate is at issue, both the initial contract and any modification of the contract must be supported in writing. *Davidson v. Wilson*, No. M2009-01933-COA-R3-CV, 2010 WL 2482332, at *7 (Tenn. Ct. App. June 18, 2010) ("In Tennessee, like an initial contract, 'a modification of a contract for the sale of real estate must be in writing.'"); *see also Hill v. Goodwin*, 722 S.W.2d 668, 671 (Tenn. Ct. App. 1986) (noting a requirement that a modification of a contract for the

---

equitably estopped from asserting the Statute of Frauds as a defense. As we liberally interpret it, the Pelts are, in the alternative to other arguments made, contending that the trial court should have made such a finding of estoppel. The trial court's order did not address the issue.

In examining the argument offered by the Pelts on appeal, we conclude that this issue is waived. The primary focus of the Pelts' argument is devoted to the essential elements of an equitable estoppel as related to the party to be estopped. Virtually unexamined in their argument, save for a single reference that the Pelts "relied upon the Benjamins' representations," are the elements of equitable estoppel as they relate to the party claiming estoppel. These elements are as follows:

> 1) Lack of knowledge and of the means of knowledge of the truth as to the facts in question; (2) Reliance upon the conduct of the party estopped; and (3) Action based thereon of such a character as to change his position prejudicially[.]

*Consumer Credit Union v. Hite*, 801 S.W.2d 822, 825 (Tenn. Ct. App. 1990) (quoting *Callahan v. Town of Middleton*, 41 Tenn.App. 21, 292 S.W.2d 501 (1954)). Notably, the Pelts' argument contains no specific discussion of "prejudice," nor does it contain any discussion of the "lack of knowledge/means of knowledge" element. Having failed to offer argument that is sufficiently responsive to all of the elements of equitable estoppel, we hold that the matter is waived.

sale of real estate must be in writing). Inasmuch as the trial court here held that an oral modification permissibly occurred, it failed to properly recognize the mandates of the Statute of Frauds and, as the previously-cited commentator cautioned against, therefore took the *Lancaster v. Ferrell Paving* decision out of context. Of course, we note again that there was not a *contract* in existence to modify at the time of the alleged oral agreement.

This is a case about contract formation, and the written offer which the Pelts claimed to have accepted plainly provided that it expired at 5:00 p.m. on December 22, 2018 if not accepted by that time. The Pelts, of course, did not timely accept that offer. Their attempt to augment the terms of the offer through proof of an alleged oral agreement is to no avail. Contrary to the conclusion effectively reached by the trial court, we agree with the Benjamins that the Pelts' position is foreclosed by the Statute of Frauds. Again, the Statute of Frauds provides that no action shall be brought "[u]pon any contract for the sale of lands" unless "the promise or agreement, upon which such action shall be brought, or some memorandum or note thereof, shall be in writing, and signed by the party to be charged therewith, or some other person lawfully authorized by such party." Tenn. Code Ann. § 29-2-101(a). Here, there is no signed writing by the Benjamins reflecting their assent to sell the property to the Pelts on the date the Pelts purported to accept the Counter-Offer. The written Counter-Offer reflected that it expired, and although correspondence was sent between the Pelts' agent and Mr. Benjamin after that expiration date, such correspondence merely was evidence that the Benjamins would potentially be open to selling their home to the Pelts, not that the Counter-Offer itself formally remained capable of binding acceptance until January 4, 2019.

"The primary purpose of the Statute of Frauds is to reduce the risk of fraud and perjury associated with oral testimony," *Smith v. Hi-Speed, Inc.*, 536 S.W.3d 458, 474 (Tenn. Ct. App. 2016) (quoting *Waddle v. Elrod*, 367 S.W.3d 217, 223 (Tenn. 2012)), and "[b]y requiring certain transactions to be in writing, the statute also helps to 'prevent the proof of verbal agreements after the memory of witnesses has been dimmed by lapse of time.'" *Id.* (quoting *Boutwell v. Lewis Bros. Lumber Co.*, 27 Tenn.App. 460, 182 S.W.2d 1, 3 (1944)). In this case, the trial court erroneously concluded that the Statute of Frauds was no impediment to the Pelts' pursuit of contractual relief, as it relied upon an alleged verbal agreement to change the terms of the Counter-Offer, namely the date by which the offer could be accepted.[4] As no writing by the Benjamins reflects their binding assent to such a change and term,[5] the trial court's judgment is hereby reversed with respect to its

---

[4] Again, the court concluded that the alleged verbal agreement was permissible on the basis of case law pertaining to modifications of existing contracts. Of course, the principles from that universe of case law cannot be blindly extrapolated so as to divorce the application of the Statute of Frauds when the Statute of Frauds is otherwise relevant to the subject matter of a given case. *See* Steven W. Feldman, 22 Tenn. Practice: Contract Law and Practice § 10:5 (September 2021).

[5] We reject arguments that the Pelts have made on appeal to the contrary and note again the trial testimony of the Pelts' agent, who specifically acknowledged there was not a signed extension agreement regarding the Counter-Offer. Moreover, whereas the Pelts appear to argue that the text messages exchanged

findings on the existence of an enforceable contract and its concomitant order of specific performance.

*Damages under Former Tennessee Code Annotated section 66-21-108*

The Benjamins' second point of contention on appeal relates to the trial court's decision to deny them damages under former Tennessee Code Annotated section 66-21-108, a statute which was repealed effective April 5, 2019. In response to the Benjamins' pursuit of relief under this statute, the Pelts advance two primary arguments in their brief on appeal. The first argument relates to the statute's repeal and alleged inapplicability on that basis. The second argument concerns the language of the statute itself, alternatively proposing that "[e]ven if Tenn. Code Ann. § 66-21-108 is applicable [in spite of its repeal], the Benjamins have not met the requirements for relief."

We need not definitively resolve either argument by the Pelts in light of the Benjamins' failure to comply with applicable briefing requirements. The Tennessee Rules of Appellate Procedure require, among other things, that arguments be supported by appropriate references to the appellate record. *See* Tenn. R. App. P. 27(a)(7) (requiring appellants' briefs to contain an argument supported by appropriate references to the record); *see also* Tenn. R. Ct. App. 6(a) (requiring that written argument include "[a] statement of each determinative fact relied upon with citation to the record where evidence of each such fact may be found"). It is well-settled law that arguments that do not contain appropriate references to the record may be considered waived. *See Bean v. Bean*, 40 S.W.3d 52, 55 (Tenn. Ct. App. 2000) ("Courts have routinely held that the failure to make appropriate references to the record and to cite relevant authority in the argument section of the brief as required by Rule 27(a)(7) constitutes a waiver of the issue."). Here, the Benjamins' argument in support of their damages issue is devoid of any citations to the record. Indeed, despite several generalized references to the "facts" and general allusions to how the "facts of the case" warrant damages, no supporting record references are provided. The issue is accordingly waived.[6]

---

on December 29 and 30 of 2018 evidence Mr. Benjamin's agreement to extend the Counter-Offer through January 4, 2019, these messages merely evidence a continued willingness on the part of Mr. Benjamin to deal with the Pelts. The messages do not evidence his agreement that the Counter-Offer remained open and could be binding on him and Ms. Benjamin if accepted by the Pelts on or before January 4. Notably, the trial court itself even commented at trial, after referencing the December 30 email correspondence, that it had not seen anything "that says the verbal contract regarding extension of the expiration date is okay."

[6] With the aim of addressing the merits of the disputes among the parties, we have already overlooked other technical briefing deficiencies, namely the Benjamins' failure to formally present either of their two primary issues on appeal in a "statement of the issues presented for review" as required by Rule 27(a)(4) of the Tennessee Rules of Appellate Procedure. We are less forgiving in our willingness to entertain the specific damages issue, however, given the noted briefing deficiencies that exist within the included argument. Interestingly, we further observe that the Benjamins fail to even mention or engage with the specific basis why the trial court denied their claim for damages. The trial court denied their claim for damages as a corollary to its determination that the Benjamins' asserted slander of title claim was not

**CONCLUSION**

For the foregoing reasons, the trial court's judgment is hereby reversed in part and affirmed in part. Specifically, although we reverse the trial court's finding that an enforceable contract existed and reverse its concomitant order of specific performance, we affirm the denial of the Benjamins' claim for statutory damages.

s/ Arnold B. Goldin
ARNOLD B. GOLDIN, JUDGE

---

properly proven. Indeed, the court's "Final Judgment Order" specifically stated as follows: "This Court . . . finds that Defendants failed to prove slander of title, therefore, no damages are awarded. As Defendants did not prevail in this claim, no damages are additionally awarded under T.C.A. 66-21-108 for wrongful filing of a lien against said property." Given the absence of any engagement with this holding, the Benjamins of course offer no specific argument as to whether the trial court's reasoning is supportable, nor do they, as the Pelts observe, raise any actual issue concerning the dismissal of the slander of title claim. Notably, the Benjamins' reply brief offers rebuttal argument on damages only as to the Pelts' argument related to the repeal of the statute, thereby in a sense compounding the inadequacies in the argument offered by their initial brief.