IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
March 21, 2018 Session
Remanded by the Supreme Court on September 13, 2018

**STATE OF TENNESSEE v. HOWARD P. FISHER**

**Appeal from the Criminal Court for Davidson County**
**No. 2015-A-632      Monte Watkins, Judge**

_____

**No. M2017-00975-CCA-R3-CD**

_____

Following a bench trial, the Defendant, Howard P. Fisher, was convicted of aggravated assault and criminal trespass, for which he received a ten-year sentence and a $50 fine, respectively. In his direct appeal, the Defendant argued (1) that the evidence was insufficient to support his conviction of aggravated assault; (2) that the trial court erred in granting the State a continuance for sentencing; and (3) that the trial court erred in denying his ineffective assistance of counsel claim. Upon review, this court affirmed the judgments of the trial court but declined to review the claim of ineffective assistance of counsel finding that the Defendant "raised a general claim of ineffective assistance of counsel in his motion for a new trial. His motion did not include **_any_** issues pertaining to trial counsel's performance or facts in support of his claim." State v. Howard P. Fisher, No. M2017-00975-CCA-R3-CD, 2018 WL 3060369, at *1, *5 (Tenn. Crim. App. June 20, 2018), perm. app. granted and case remanded, No. M2017-00975-SC-R11-CD (Tenn. Sept. 13, 2018) (order). On September 13, 2018, the Tennessee Supreme Court granted the Defendant's application for permission to appeal and remanded the case to this court to discuss the merits of the Defendant's claim of ineffective assistance of counsel. State v. Howard P. Fisher, No. M2017-00975-SC-R11-CD (Tenn. Sept. 13, 2018) (order). Upon further review, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS, P.J., and NORMA MCGEE OGLE, J., joined.

Manuel B. Russ, Nashville, Tennessee, for the Defendant, Howard P. Fisher.

Herbert H. Slatery III, Attorney General and Reporter; Clark B. Thornton, Senior Counsel; Glenn Funk, District Attorney General; and Deborah Housel, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION ON REMAND**

Our previous opinion contained a detailed recitation of the facts, and for purposes of the limited remand, we will summarize only the evidence that is relevant to whether the Defendant was deprived of the effective assistance of counsel at trial. See Howard P. Fisher, 2018 WL 3060369, at *1. This case concerns the January 19, 2015 assault of the victim, William Derrick, at the Discount Mart in Nashville, Tennessee. The Defendant was subsequently arrested and charged with aggravated assault and criminal trespass. Following the August 2, 2016 bench trial, the Defendant was convicted as charged. On December 1, 2016, the Defendant, through newly appointed counsel,[1] filed a motion for a new trial, in which he raised a claim of ineffective assistance of counsel. As alleged in his motion, the Defendant claimed, "[he] received ineffective assistance of counsel prior to and during his trial in violation of his 6th Amendment and Article 1 § 7 right to assistance of counsel." Included in the motion was the following language: "[The Defendant] has been advised about the disadvantages of raising this particular issue in this proceeding and wishes to proceed nonetheless." On May 5, 2017, the trial court held an evidentiary hearing, and the Defendant and trial counsel testified as follows.

The Defendant testified that he was alleging ineffective assistance of trial counsel in his motion for a new trial. He said that the "first issue and reason is . . . that, before the . . . bench hearing . . . I informed [trial counsel] that at no time did I want a bench trial." According to the Defendant, trial counsel told him that he needed to sign some paperwork in order to pick a jury. The Defendant started to sign the papers but stopped. Prior to the bench trial, trial counsel had represented the Defendant for about a year and a half, and the case was set for jury trial on at least one occasion, if not more, but continued for various reasons. The following exchange then occurred between the Defendant and the trial court:

> The Court: So you're saying that you couldn't have spoken up and said no, I don't want a bench trial, I want a jury –
>
> Defendant: Well. Each and every time that I tried to –
>
> . . . .
>
> The Court: You couldn't have stood up and said no, I don't want a bench trial, I want a jury trial?

---

[1] In appears from the record that original trial counsel filed a motion to withdraw at the sentencing hearing. Following that hearing, the trial court granted the motion and appointed new counsel to represent the Defendant in his motion for new trial and on appeal.

| | |
|---|---|
| Defendant: | Well, see, that was understood from the start. And, you know, Your Honor, you, yourself, you know I tried to speak up numerous times in your court and you silenced me. |
| The Court: | I silenced you about your constitutional right? |
| Defendant: | Yes, sir. Yes, you did. I mean you can get the paperwork and look. I did not sign anything to waive nothing. |

Asked to describe the conversation during which trial counsel advocated for a bench trial, the Defendant said, trial counsel "came and talked to me about a couple of minutes and then, boom, next thing I know, we're in the courtroom." The Defendant recalled that trial counsel was "rushing" him, and the Defendant kept asking, "when are we going to start picking the jury." Although trial counsel told the Defendant that he might be able to get into court faster if he had a bench trial, the Defendant made it clear to trial counsel that he did not want a bench trial. The Defendant further explained that at the time of the instant offense he had been on parole, which had been revoked following a parole hearing. The Defendant maintained that his parole status was not a factor in choosing a jury trial over a bench trial.

The Defendant also said that his contact with trial counsel prior to trial "was very minor." He would speak to trial counsel on the telephone but never over video conference or anything else. He said his conversations always felt "rushed." The Defendant would talk to trial counsel every time he would come to court but only for a few minutes in the conference room. The Defendant also claimed that trial counsel never provided discovery regarding his case except for a copy of the information trial counsel had received from the State about prior arrests. The first time he saw the video recording of the incident was at the bench trial. The Defendant testified that he was on parole for a life sentence and that settling the case was not an option.

The Defendant stated that he wanted to testify at trial and discussed doing so with trial counsel. He explained that he did not testify because trial counsel gave him "erroneous information." He said trial counsel brought him various forms to sign prior to trial including the Waiver of Right to Testify form. The Defendant testified that he mistakenly signed the form because trial counsel told him they were for "peremptory choices." The Defendant admitted that trial counsel asked him in front of the judge during the Momon hearing if he wanted to testify, and he answered "no" on trial counsel's advice.

The Defendant claimed he expected to have a jury trial even as the State's witnesses were testifying. He asked trial counsel when they were going to start picking a jury, and trial counsel said "just give 'em (sic) time." The last time the Defendant had a jury trial was in 1985, so he was unaware of how the trial would work. The Defendant

said that trial counsel never discussed trial procedure with him. According to the Defendant, during the bench trial, he continued to inquire about the jury asking, "where's the jury," but trial counsel said "we'll get to it." At the end of trial, the Defendant asked why he did not have a jury, and trial counsel responded that he could no longer represent him.

The Defendant said trial counsel "did not plan a defense, period." The Defendant then apparently offered other defenses including "sid[ing] with the arrest warrant" because it was "void" and "invalid." He said, if that failed, he would have "testified exactly how everything happened;" that he did not "assault[] anybody, period;" and that he was only "protesting." Asked if there was anything else that he would like to tell the judge regarding trial counsel's representation, the Defendant said trial counsel "failed to call my defense witnesses that I had requested." The Defendant explained that he had three witnesses, police officers Morton, Lee, and Baker, that could have verified that the Defendant had been protesting while carrying a baseball bat, but he admitted that the officers would not have been able to testify as to the events on the day of his arrest. He agreed, however, that the victim had already testified that the Defendant had been known to frequently carry a bat, so that fact was already in evidence. The Defendant also admitted that trial counsel had subpoenaed Officer Lee, but he was dismissed without consulting the Defendant. The Defendant said another witness, Ms. Greenlee, could have verified his typical behavior with the bat. Again, the Defendant said trial counsel should have argued that the arrest warrant was "bogus" because it was unsigned and not properly stamped. The Defendant suggested that the arrest warrant would have "barred [him] from being tried . . . they would have . . . had to rearrest me."[2] Nevertheless, the Defendant agreed that he could have been indicted regardless of whether he was arrested.

On cross-examination, the Defendant again admitted that he had previously been through a jury trial for another incident. At that trial, the Defendant was aware that jurors came out and sat in the jury box. He conceded that in this case there was no jury in the jury box. He explained that he had to "refamiliarize" himself with the process and "wasn't paying that attention." The Defendant also reiterated that he told the trial judge that he did not want to testify.

Trial counsel testified that almost one hundred percent of his work involved criminal cases and that he had participated in around thirty jury trials prior to representing the Defendant. In preparation for this trial, he reviewed discovery and provided the Defendant with copies. Trial counsel further reviewed the video recording of the incident "multiple times" with the Defendant, and he hired an Arabic translator to interpret dialog in the video. Trial counsel discussed the case with the Defendant during a video conference and every time they went to court, about half an hour each time. Trial counsel

---

[2] According to his testimony, the Defendant filed a writ of error coram nobis addressing this issue.

was aware of the Defendant's parole status at the time of representation. Asked how the Defendant's parole status affected his representation, trial counsel said, "Well. With the life sentence, he was offered three [at] thirty, which is a Range 1, the lowest you can get for the charge. He said he definitely didn't want to take that, he didn't want to take anything . . . because it would be an automatic violation of the parole for life[.]" Trial counsel's defense strategy was that a baseball bat was not a deadly weapon per se, and if it was not deadly per se, it had to be deadly in its use or intended use. Trial counsel believed the video did not show the Defendant ever using or attempting to use the baseball bat.

Trial counsel explained to the Defendant the process of the trial. On November 17, trial counsel had a video conference with the Defendant during which the Defendant said, "the jury trial's going to take too long" and he "want[ed] to go forward with a bench trial because we could have a bench trial much quicker." Trial counsel recalled the first bench trial was set in June, six or seven months later. Trial counsel discussed the pros and cons of a bench trial versus a jury trial with the Defendant briefly. He told the Defendant that his case was essentially a "legal issue" and that "explaining this to a jury could be detrimental, given the fact that he did have a baseball bat and that he always carries a baseball bat[.]" According to trial counsel, the Defendant appeared "confrontational" with people inside the market on the video. Trial counsel testified that the Defendant "was ready to go forward with a bench trial[,] and he wanted it done as quickly as possible." Trial counsel said the Defendant never told him that he wanted a jury trial. On the day of trial, the Defendant signed a Waiver of Right to Jury Trial form. Asked if the Defendant ever inquired about the jury, trial counsel responded, "No. He never asked that at all."

Trial counsel said he discussed presenting evidence with the Defendant but said the Defendant did not have any evidence other than testifying on his own behalf. Trial counsel and the Defendant discussed several witnesses including Officers Baker and Liu, whom the Defendant confused with Lee. Trial counsel subpoenaed both officers, questioned them before trial, and ultimately dismissed them. Officer Baker "didn't really remember anything about it" and Officer Liu's testimony would have been "detrimental to the case" because he said the Defendant carried the bat "sometimes." Trial counsel explained all of this to the Defendant.

Trial counsel advised the Defendant against testifying because the Defendant was "fairly eccentric," the testimony would not "progress[] the case at all," and the less interaction the Defendant had with the judge the more beneficial it could be to the case. When told that the Defendant felt "trapped" during the Momon hearing, trial counsel said, "I just advised him that I didn't think it was a good idea to testify, but that if he wanted to, he could." The Defendant said "ok" and followed trial counsel's advice.

During the bench trial, one of the State's witnesses testified about prior confrontations the Defendant had in the market. Trial counsel believed that the testimony would have been grounds for a mistrial if heard in front of a jury; however, following a bench conference, the trial court judge stated that he would not consider the evidence. Trial counsel recalled discussing how the Defendant's prior convictions would impact his sentencing. He said it was "fairly clear . . . that he was a career or, you know, at least a Range 3. But it didn't really matter, because we were turning down Range 1 offers." Although trial counsel said the Defendant's mental health was not an issue, he did consider doing a mental health evaluation. Trial counsel ultimately did not have the Defendant evaluated because it "seem[ed] that [the Defendant] understood the process."

On cross-examination, trial counsel testified that he had been practicing law just over nine years. He did not recall exactly how many times he met or discussed the case with the Defendant, but it was "somewhere around six to eight [times], maybe more." He spoke to the Defendant a "few times" over the phone. Trial counsel did "exhaustive case law research" on the Defendant's case, which he argued in the motion for judgment of acquittal. Trial counsel emphasized that it was the Defendant's choice to have a bench trial and the Defendant's choice not to testify. He also stressed that he discussed the possible defenses and witnesses with the Defendant prior to trial.

The Defendant was recalled as a witness. Defense counsel then presented him with a copy of his signed Waiver of Right to Jury form and Waiver of Right to Testify form. The Defendant said that his entire name was signed on the Waiver of Right to Testify form because trial counsel "misled" him into signing. He "didn't have [his] glasses or [his] contacts, so [he] couldn't really read," and believed he was signing something different. On the Waiver of Right to Jury form, the Defendant signed part of his name and explained that he stopped signing

> Because, like I had told you, it's perjury. We had a controversy, because I had told the man, informed the man that I was not going to waiver my right to a jury trial and then, like I said, I thought that he put this paperwork in front of me, I didn't sign it. I started to but then I stopped. And that's why I trying, you know, get the Court, get the Court's attention because I thought that the Court was going to look at the form before you started the bench trial. But you never did.
>
> . . . .
>
> This was, this was a controversy. That's they (sic) reason why I did not waive my right to a jury trial.

Following the hearing, the trial court entered a written order on May 24, 2017, denying relief and finding that the "[D]efendant has presented no claims of merit to

-6-

substantiate relief for ineffective assistance of counsel." The Defendant's timely appeal followed.

## ANALYSIS

On remand, we are asked to address the merits of the Defendant's ineffective assistance of counsel claim. Although the Defendant failed to support this claim with specific facts in his Motion for New Trial, see Tenn. Code Ann. §40-30-104(d), (e), we are able to glean the following issues based upon the motion for new trial hearing transcript, the order of the trial court, and the appellate briefs. See State v. Lester D. Herron, No. 03C019109-CR-00284, 1992 WL 43273, at *4 (Tenn. Crim. App. Mar. 10, 1992) (even if an issue is not specially pled, a trial court may rule upon it if it is litigated by the parties in a post-conviction hearing without objection). As far as we can tell, the Defendant asserts that trial counsel was ineffective in (1) coercing the Defendant into a bench trial; (2) misleading the Defendant into waiving his right to testify at trial; and (3) failing to prepare a defense on the Defendant's behalf. Additionally, based on the testimony at the motion for new trial, the Defendant apparently argues that trial counsel was ineffective in failing to provide the Defendant with pertinent discovery. He also suggests for the first time on appeal that trial counsel was ineffective in failing to adequately address the Defendant's competency. We must deem the later two issues waived because the Defendant failed to list the specific factual allegations supporting these claims in his Motion for New Trial, the trial court did not rule on these issues, and the State did not address them in its brief to this court. Id., see also Tenn. Ct. Crim. App. R. 10(b). As to the remaining issues, we agree with the State, and conclude that the trial court properly denied relief.

We review claims of ineffective assistance of counsel raised on direct appeal under the same standard as those raised in post-conviction proceedings. State v. Burns, 6 S.W.3d 453, 461 n.5 (Tenn. 1999). Post-conviction relief is only warranted when a petitioner establishes that his or her conviction or sentence is void or voidable because of an abridgement of a constitutional right. Tenn. Code Ann. § 40-30-103. The Tennessee Supreme Court has held:

> A post-conviction court's findings of fact are conclusive on appeal unless the evidence preponderates otherwise. When reviewing factual issues, the appellate court will not re-weigh or re-evaluate the evidence; moreover, factual questions involving the credibility of witnesses or the weight of their testimony are matters for the trial court to resolve. The appellate court's review of a legal issue, or of a mixed question of law or fact such as a claim of ineffective assistance of counsel, is de novo with no presumption of correctness.

Vaughn v. State, 202 S.W.3d 106, 115 (Tenn. 2006) (internal citations and quotation marks omitted); see Felts v. State, 354 S.W.3d 266, 276 (Tenn. 2011); Frazier v. State, 303 S.W.3d 674, 679 (Tenn. 2010). A post-conviction petitioner has the burden of proving the factual allegations by clear and convincing evidence. Tenn. Code Ann. § 40-30-110(f); Tenn. Sup. Ct. R. 28, § 8(D)(1); Dellinger v. State, 279 S.W.3d 282, 293-94 (Tenn. 2009). Evidence is considered clear and convincing when there is no serious or substantial doubt about the accuracy of the conclusions drawn from it. Lane v. State, 316 S.W.3d 555, 562 (Tenn. 2010); Grindstaff v. State, 297 S.W.3d 208, 216 (Tenn. 2009); Hicks v. State, 983 S.W.2d 240, 245 (Tenn. Crim. App. 1998).

Criminal defendants are constitutionally guaranteed the right to effective assistance of counsel. Dellinger, 279 S.W.3d at 294 (internal citations omitted). In order to prevail on an ineffective assistance of counsel claim, the petitioner must establish that (1) his lawyer's performance was deficient and (2) the deficient performance prejudiced the defense. Vaughn, 202 S.W.3d at 116 (citing Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975); Strickland v. Washington, 466 U.S. 668, 687 (1984)). A petitioner successfully demonstrates deficient performance when the petitioner establishes that his attorney's conduct fell "below an objective standard of reasonableness under prevailing professional norms." Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996) (citing Strickland, 466 U.S. at 688; Baxter, 523 S.W.2d at 936). Prejudice arising therefrom is demonstrated once the petitioner establishes "'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" Id. at 370 (quoting Strickland, 466 U.S. at 694).

In denying relief on the Defendant's ineffective assistance of counsel claim, the trial court ruled as follows:

> Specifically with regard to ineffective assistance of counsel, [trial counsel] did an excellent job in representing [the Defendant] in this particular case. He actually had a defense in what defense he could present in that he said this was not an aggravated assault because [the Defendant] did not raise his bat at someone and was not close enough to cause this person to fear from being injured by [the Defendant]. The Court didn't take that particular view. And [trial counsel], the Court believes, did everything any lawyer could do to represent [the Defendant] on this particular case. So I find that his level of competence was high and that he did exactly what any lawyer would do to represent a client.
>
> Also, with regard to [the Defendant], I find his testimony not to be credible. He specifically waived his right to testify, after being placed under oath. He waived his right to a jury trial. And if he wanted a jury trial, all he had to do is just simply stand up and say I want a jury trial.

That's all he had to do. And he's been around the system long enough to know that he could've done that.

So, I find that [trial counsel] did everything that he should've done and could've done in representing him; and so I'm going to respectfully deny his claim for ineffective assistance of counsel.

Upon our review, the record does not preponderate against the determination of the trial court. As an initial matter, the trial court accredited the testimony of trial counsel over the testimony of the Defendant as to each ground for relief. In regard to the Defendant's claim that trial counsel was ineffective because he coerced him into a bench trial, the signed waiver of jury trial form belied this testimony. In addition, trial counsel testified that the Defendant never told him he wanted a jury trial and sought a bench trial to expedite the matter. As to the Defendant's claim that he was misled when he signed a form waiving his right to testify because he was confused during the Momon hearing, the trial court found and the record reflects that "[the Defendant] specifically waived his right to testify, after being placed under oath." As his last ground for relief, the Defendant argues that trial counsel was ineffective in failing to plan a defense and failing to call various witnesses on his behalf. Although the Defendant testified that trial counsel failed to provide a defense "period" and failed to call witnesses, trial counsel testified that he conducted "exhaustive case law research" on the Defendant's case. Trial counsel mounted a legal defense which centered upon whether a baseball bat, as used in this case, was a deadly weapon as required by law, and argued that the Defendant never raised the bat at the victim. Trial counsel further explained that he did not call any defense witnesses because, after discussing the case with two of the officers, their testimony would not have been beneficial. In any event, the Defendant did not present any of the purported witnesses during the hearing, see Black v. State, 749 S.W.2d 752, 757 (Tenn. Crim. App. 1990), and had he done so, their testimony would have been cumulative to the testimony of the victim, who conceded that the Defendant was often seen carrying a baseball bat. Because the trial court found the Defendant's testimony as to all issues presented to be incredible, the Defendant has failed to establish by clear and convincing evidence that trial counsel was ineffective. Accordingly, he is not entitled to relief.

## CONCLUSION

Based upon the foregoing reasoning and analysis, we affirm the judgment of the trial court.

_____
CAMILLE R. MCMULLEN, JUDGE